UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

SAMMY WESLEY CUPPLES                                              PLAINTIFF

v.                          Civil No. 1:15-CV-01011-SOH-BAB[1]

LT. KEVIN PENDLETON; DEPUTY                              DEFENDANTS
SHERIFF JOSHUA TEMPLE; DEPUTY
MYERS; SHERIFF MIKE MCGOUGH;
NURSE SHERRIE RICE

## REPORT AND RECOMMENDATION

This is a civil rights action filed by Plaintiff, Sammy Wesley Cupples, pursuant to the provisions of 42 U.S.C. § 1983.  Plaintiff proceeds *pro se* and *in forma pauperis*.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

Currently before the Court is a Motion for Partial[2] Summary Judgment by Defendants McGough, Rice, Templeton, and Myers.  ECF No. 31.  Plaintiff was sent a questionnaire to aid him in responding to the motion, which he completed and filed on January 31, 2017.  ECF No. 59. After careful consideration of the briefing and sworn statement of the Plaintiff, the undersigned makes the following Report and Recommendation.

## 1.    BACKGROUND

Plaintiff is currently incarcerated in the Arkansas Department of Correction ("ADC") Varner Unit.  Plaintiff's Amended Complaint[3] centers on events occurring during his incarceration

---

[1] This case was consolidated with case no. 1:15-CV-01012 on March 13, 2015.  ECF No. 7.

[2] Defendants concede there are material issues of fact precluding summary judgment as to the excessive force claim against Pendleton.

[3] As part of the consolidation, Plaintiff was ordered to file an Amended Complaint.  ECF

in the Union County Detention Center (UCDC).  Plaintiff alleges Joshua Temple[4] failed to protect him when he refused two protection requests from Plaintiff, and Plaintiff was subsequently "jumped" and injured by three inmates the next day.  ECF No. 10, pp. 4-5.  Plaintiff alleges Defendant Jail Nurse Sherri Rice refused him medical care on several occasions, denied pain medication, made medical decisions without proper procedures such as x-rays, and made medical decisions "outside her license and position."  ECF No. 10, p. 7.  Plaintiff alleges Defendant Pendleton used excessive force against him and misused his "authoritative position." Plaintiff further alleges Pendleton denied him medical attention after using excessive force against him and re-breaking his collarbone, instead telling him to put a request in the kiosk and walking off.  ECF No. 10, pp. 8, 12.  Defendant alleges Defendant Myers refused to feed him and refused to have an officer of higher rank resolve the issue.  Plaintiff alleges Myers refused to feed him in retaliation for filing suit against fellow officers.  ECF No. 10, pp. 9-10.  Plaintiff alleges Defendant McGough neglected his position as Sheriff by neglecting to monitor his deputies in the proper implementation of jail rules and policies relating to inmates who request protection, medical care, and emergency response.  ECF No. 10, p. 3.

Plaintiff proceeds against all Defendants in both their official and personal capacity.  ECF No. 4-8.  Plaintiff seeks compensatory and punitive damages. He also asks that the policies and procedures of the Union County Sheriff's office be re-evaluated, re-written, and made to comply with Constitutional standards. He further asks that there be an investigation into the daily activities of the Union County Jail.  ECF No. 10, p. 13.

---

No. 8.

[4] Documents submitted by Defendant indicate Temple's correct name is Templeton. However, he will be referred to as Temple in this document for consistency.

Defendants filed their Motion for Partial Summary Judgment on July 29, 2016.  ECF No. 31.  Plaintiff filed a Statement of Facts on September 2, 2016.  ECF No. 42.  Plaintiff filed a written Response, which was incorrectly labelled as a motion, on December 27, 2016.  ECF No. 55.  He filed his completed summary judgment questionnaire on January 31, 2017.  ECF No. 59.

## 2.      LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995).  The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  The Court must view all evidence and inferences in a light most favorable to the nonmoving party.  *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012).  However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## 3.      DISCUSSION

Defendants argue summary judgment in their favor is appropriate on the following

grounds: (1) Plaintiff has not alleged any facts showing he can proceed against Union County for an official capacity claim; (2) Plaintiff's claims against Defendant McGough are based solely on the doctrine of *respondeat superior*; (3) neither Defendant Rice nor Defendant Pendleton were deliberately indifferent to Plaintiff's serious medical needs, and Plaintiff has provided no objectively verifiable evidence of any detrimental effects from delay or denial of care; (4) Plaintiff's claims concerning the food incident with Defendant Myers are factually false; (5) there is no factual basis to show that Defendant Temple knew there was a substantial risk of harm to Plaintiff. ECF No. 32, pp. 3-11.

Because Plaintiff raises a variety of claims based on several incidents and against several Defendants, the Court will first lay out the apparent timeline of events based on Plaintiff's allegations and documents submitted by both parties. Medical records pertaining to Plaintiff's other health issues are not discussed.

On December 13, 2014, Plaintiff alleges he informed Defendant Temple he "feared physical harm" from several inmates. ECF No. 59, p. 4. Plaintiff did this by giving Temple two handwritten grievances through hole in his cell door. ECF No. 59, pp. 4-5. He alleges Temple failed to investigate the situation and refused to act on the requests for protection. ECF Nos. 10, p. 4; 59, p. 5. On December 14, 2014, Plaintiff claims he was "jumped" by three inmates and did not receive help afterwards for three hours. Temple then opened the door after three hours, and another unnamed deputy took Plaintiff to the hospital. ECF No. 59, p. 6.

Medical records from December 14, 2014, show Plaintiff was taken to the Medical Center of South Arkansas. He was diagnosed with a clavicle fracture by Dr. Dunn and prescribed Norco (hydrocodone/acetaminophen) for pain, to be taken every six hours as needed. ECF No. 32-4, pp.

5-10.  The home care notes mention the use of ice and a sling or splint, but do not indicate if Plaintiff was given a sling or splint at the hospital.  He was returned to UCDC, where he was placed in "lockdown and placed on the floor in a cell and not given any pain medication for [his] broken collarbone."  ECF Nos. 10, p. 11.  Plaintiff filed a grievance on December 15, 2014, stating he was not being given his medications.  ECF No. 32-4, p. 11.  According to the jail medical record, Plaintiff was seen by Dr. Hopson on December 16, 2014.  Dr. Hopson prescribed 800 mg of ibuprofen to be taken twice a day for four weeks.  ECF No. 32-4, p. 13.  The December Medical Administration record (MAR) shows Plaintiff started receiving the ibuprofen on December 16, 2014, although he did not receive it at all on December 29, 2014, and only once per day on December 27, 28, and 29, 2014.  ECF No. 32-4, p. 15.  The January MAR indicates he received ibuprofen until January 12, 2015.  He missed one dose on January 11, 2014.  ECF No. 32-4, p. 18.

Plaintiff was prescribed Norco at the hospital on December 14, 2014, but never received this pain medication.  He was told UCDC had a "no narcotics" policy.  Plaintiff alleges he "had to suffer pain and suffering over jail policy prohibition of narcotics."  ECF No. 59, p. 10.

On December 16, 2014, Plaintiff asked to go back to the hospital because he had hurt himself trying to get off a wet floor the previous evening.  He was escorted to nursing, where the nurse issued a bottom bunk order.  The medical notes state Plaintiff voiced no complaints while he was at the nursing station.  ECF No. 32-4, p. 15.  Plaintiff was also seen by Dr. Hopson on December 16, 2014, as discussed above.  On December 22, 2014, Plaintiff was seen by Dr. Hopson, who noted Plaintiff was not wearing his sling, as ordered by the doctor.  Dr. Hopson told him he was to wear his sling at all times, even while sleeping.  ECF No. 32-4, p. 16; 59, p. 15.  Plaintiff states that, because of the way the collarbone was broken and re-broken, wearing the sling

caused pain because he had been given the wrong sling.  This prevented his collarbone from aligning properly.  Plaintiff should have been given surgery.  ECF No. 59, p. 15.

On December 23, 2014, Plaintiff alleges he was moved to another cell and again placed on the floor.  ECF No. 59, p. 11.  On December 30, 2014, Dr. Hopson cleared Plaintiff to be released back into general population, noting full range of motion.  ECF No. 32-4, p. 17.  Plaintiff alleges Defendant Rice then took his sling away, stating he could not have it in general population. Plaintiff alleges his collarbone was visibly not healed at this point.  ECF No. 59, p. 16.  While in general population, Plaintiff was assigned a top bunk and was pulled down from the bunk by another inmate, injuring his collarbone again.  ECF No. 10, p. 12.

Plaintiff alleges he was moved to a cell which had an inmate who had "severe mental issues."  ECF No. 59, p. 11. During one of his "psychotic episodes," on or about January 3-4, 2015, the mentally ill inmate came after Plaintiff with his fists balled up.  Plaintiff had to physically restrain this inmate, and convince him he was not a hit man out to get him.  This need for physical restraint caused him severe pain due to his broken collarbone.  ECF No. 59, p. 11-12.

UCDC medical records show Plaintiff was seen on January 7, 2015, complaining of shoulder pain after an altercation.  The notes indicate Plaintiff was wearing a handmade sling, but the shoulder did not appear to be out of place and there was no dropping or swelling noted.  Plaintiff was instructed not to use the arm for a while and to place another sick call if needed. ECF No. 32-4, p. 20.  On January 20, 2015, he was seen by Dr. Hopson for complaints of neck and shoulder pain, as well as other unrelated issues.  He was prescribed 800 mg of ibuprofen to be taken twice daily for ten days.  ECF No. 32-4, p. 23.

On February 3, 2015, Plaintiff was seen by nursing for complaints of pain in his shoulder

because he was not receiving his ibuprofen.  The nurse explained she would not give ibuprofen without a prescription, but he could get some at the commissary.  Plaintiff objected to being required to purchase ibuprofen and threatened a lawsuit.  ECF No. 32-4, p. 28.

On February 5, 2015, Plaintiff did not receive a food tray from Sergeant Golbraith. Defendant Pendleton and others were called.  Pendleton told Plaintiff to pick up other trays and slide them out.  Plaintiff said that was not his job, and all he wanted was his food.  Pendleton then grabbed Plaintiff by his left arm, twisted it behind his back, and slammed him into a wall, rebreaking Plaintiff's collarbone.  Plaintiff alleges the break in the collarbone could be seen through the skin.  ECF No. 59, p. 18.  Plaintiff filed a grievance about this incident.  ECF No. 59, p. 50.  Plaintiff did not sue Golbraith because he discovered what the error had been on the food tray and apologized to Plaintiff.  ECF No. 59, p. 17.  Plaintiff alleges when he asked for medical attention after his assault, Pendleton told him to put a request in the kiosk and walked off.  ECF No. 10, p. 12.  Later that evening, Plaintiff told Sergeant Smith about the incident, and showed him that his collarbone moves back and forward and he needed medical treatment as soon as possible.  Smith told him "you heard Lt. Pendleton, put in a request to kiosk."  ECF No. 59, pp. 21-22.  Plaintiff alleges he did not receive medical treatment until four days later, and the medical care was not proper.  ECF No. 59, p. 22.

On February 6, 2015, Plaintiff asked for medical attention because his collarbone was broken and he was complaining of pain.  Plaintiff was escorted to nursing.  Plaintiff did not complain of pain while removing his clothing.  The medical note stated there was no bruising, or discoloration, and he could move his arm and place it behind his back without complaints of pain. The note indicate he should be referred to a provider.  ECF No. 32-4, p. 29.  Another note for

7

February 6, 2014, noted no edema or swelling, and plaintiff denied any pain at this time.  ECF No

32-4, p. 30.  Plaintiff disputes this statement, saying he was swollen and it was obvious even over

a year later when he was seen at the ADC.  He refers to his Exhibit C.  This exhibit is a grievance

appeal decision for ADC Grievance NC-16-00629 dated August 25, 2016.   In it, it was noted that

an exam at the ADC showed a fracture non-union with no healing identified, marked deformity of

the left collarbone, and muscular atrophy.  Plaintiff had been seen by an orthopedic doctor and

surgery was scheduled for his collarbone.  ECF No. 59, p. 40.

Plaintiff was seen by Dr. Hopson on February 9, 2015.  He was given a new order to wear

a brace to keep his shoulder in place.  The note indicates Plaintiff stated "I ain't coming to nursing

for lockdown."  Hopson told him he was not going to lockdown, he was coming to nursing for his

brace and also his protection.  Plaintiff signed a waiver regarding the brace in nursing.  ECF No.

32-4, p. 31.  Plaintiff alleges Defendant Rice forced him to sign the waiver.  She would not

recommend x-rays and more proper care, and would not listen to his pleas and descriptions of pain

and suffering, or look at the movement of his bones.  She threatened to lock him down until it

healed. ECF No. 59, p. 24.  The medical record does not indicate Plaintiff was prescribed anything

for pain, and an MAR for February was not included in the record.

On March 5, 2015, Plaintiff alleges Defendant Myers refused to feed him at noon chow

call.  Plaintiff believes this was an act of retaliation against him for filing a lawsuit.  ECF No. 10,

p. 15.  Plaintiff was asked if Defendant Myers said anything to him or anyone else which led him

to believe he was denied a tray as a form of retaliation. Plaintiff stated he did "through body

language and mannerisms, by ignoring me blatantly, obviously facely, and all."  ECF No. 59, p.

28. Plaintiff received his dinner tray, but alleges he was without food for sixteen hours.  ECF No.

59, p. 31.  The reply to his grievance states "Sgt. Myers has been told how to pass trays.  It should no longer be a problem."  ECF No. 59, p. 53.

On April 12, 2015, Plaintiff asked for something for pain in his back.  ECF No. 32-4, p. 33.  He was seen by Dr. Hopson on April 13, 2015, and given a prescription for 800 mg of ibuprofen twice daily for three days.  ECF No. 32-4, p. 34.  On May 13, 2015, Plaintiff asked for surgery on his collarbone, and noted a lawsuit.  ECF No. 32-4, p. 36.  On May 15, 2015, Plaintiff indicated he should be taken off the list because he will not be able to have surgery and he would be getting out soon.  ECF No. 32-4, p. 37.  On May 18, 2015, Plaintiff was seen by Dr. Hopson for complaints of shoulder pain.  Dr. Hopson reminded him that he refused to wear a sling for his arm.  ECF No. 32-4, p. 38.

### A.  Official Capacity Claims

Defendants argue Plaintiff cannot show that any policy or custom of Union County was the moving force behind any alleged constitutional violations.

Under Section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or in both.  In *Gorman v. Bartch,* the Eighth Circuit Court of Appeals ("Eighth Circuit") discussed the distinction between individual and official capacity suits.  As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available.  *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).  Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself.  *Id.* 502 U.S. at 24−27, 112 S.Ct. at 361−62 (1991).  Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity

may be raised as a defense. *Id.* 502 U.S. at 25–27, 112 S.Ct. at 362.

*Gorman,* 152 F.3d 907, 914 (8th Cir. 1998). "[R]igorous standards of culpability and causation must be applied to ensure that the [county] is not held liable solely for the actions of its employee" in cases where a plaintiff claims a county has caused an employee to violate the plaintiff's constitutional rights. *Board of County Commissioners, Oklahoma v. Brown,* 520 U.S. 397, 405 (1997).

There is no dispute that Plaintiff suffered a broken collarbone and was treated for it on December 14, 2014 at the Medical Center of South Arkansas. Nor is there any dispute he was prescribed Norco for pain management. He was discharged back to UCDC that same day. There is no dispute in the record that Plaintiff did not receive any pain medication, narcotic or otherwise, until sometime on December 16, 2014. At that time he did not receive the medication prescribed by the outside physician. Instead, he received ibuprofen. Plaintiff alleges both were the result of the UCDC "no narcotics policy." Based on these facts, material questions of fact remain as to UCDC's "no narcotics policy" and how it relates to Plaintiff's complete denial of pain medication for approximately two days, as well as his failure to receive the pain medication prescribed by a physician for his broken collarbone. *See Boyd v. Knox*, 47 F. 3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation"). The Motion for Summary Judgment on this issue should be DENIED.

**B.  *Respondeat Superior* - Defendant McGough**

Defendants correctly argue Defendant McGough was sued simply because he is Sheriff of Union County.

A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability.  *See Monell v. Department of Social Services,* 436 U.S. 654, 694 (1978).  "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity."  *White v. Holmes,*  21 F.3d 277, 280 (8th Cir. 1994); *see also Keeper*, 130 F.3d at 1314 ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability").   "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.  To establish personal liability of the supervisory defendants, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights."  *Clemmons v. Armontrout,* 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006)). In other words, Defendant McGough cannot be held liable merely because he holds a supervisory position at the UCDC.

In his Amended Complaint, Plaintiff alleges Defendant McGough neglected his position as Sheriff by failing to monitor his deputies.  ECF No. 10, p. 3.  In his questionnaire, Plaintiff indicated McGough was personally involved in the December 13, 2014, attack "through indirect grievances and his deputies under him, that spoke with him directly and having 1st hand knowledge are part of the choices and resolution process and superior authority position he holds liability of my custodian while in his jail." [sic] ECF No. 59, p. 33.  Plaintiff alleged McGough had personal involvement in the food tray incidents directly or indirectly because "he is over the deputies and part of the solution choice making process."  ECF No. 59, p. 34.  Plaintiff never had a conversation with Defendant McGough regarding any of the issues on his amended complaint.  ECF No. 59, pp. 34-35.

Based on Plaintiff's allegations and sworn written answers to the Court's questionnaire, it is clear Defendant McGough had no personal involvement with or personal responsibility for any of Plaintiff's claims.  He was named as a Defendant simply because of his position as Sheriff. There is therefore no material question of fact regarding Plaintiff's claim against him, and he is entitled to judgement as a matter of law in his favor.

### C.  Denial of Medical Care – Defendants Rice and Pendleton

Plaintiff argues he was denied medical care for his collarbone by Defendant Rice on several occasions, and by Defendant Pendleton when he told him to file a kiosk request for medical care and walked away rather than helping him on February 5, 2015.

Defendants argue the record contradicts Plaintiff's allegations, because he was a frequent patient of Defendant Rice, and was never refused a request for medical attention.  ECF No. 32, p. 6.  As to Defendant Pendleton, they argue Plaintiff submitted a sick call on February 6, 2015, and was seen on February 7, 2014.  ECF No. 32, p. 6.

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012).  To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132

F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted). There is no dispute that Plaintiff's broken collarbone constituted a serious medical need.

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

Further, it is well settled that a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citations omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."

*Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976).  However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009).  The objective seriousness of delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the record.  *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005).  Unless, however, the need for medical attention is obvious to a layperson in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay.  *See Schaub v. VonWald,* 638 F.3d 905, 919 (8th Cir. 2011) (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999); *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995); *see also Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation").

Plaintiff has provided sufficient objectively verifiable evidence of the detrimental effects of a denial or delay or medical care, at least for the analysis at this juncture.  He has provided evidence from the ADC noting medical providers there diagnosed him with a fractured collarbone showing no healing, with marked deformity of the collarbone, and muscle atrophy.  The statement also indicates he now needs surgery to correct it.  ECF No. 59, p. 40.

Several material facts remain in dispute as to the denial or delay of medical care to Plaintiff by both Defendants Rice and Pendleton.  The Court first notes that the medical records provided by UCDC do not indicate what nurse the inmate actually sees on the medical records. The only medical provider identified by name is Dr. Hopson.  Nor are the dates of the exam part of the printout; they are handwritten on the record.  The Court must therefore assume that Nurse Rice was the examiner and that the handwritten dates are correct.  Defendants seem to be correct in their

argument that Plaintiff was seen by some form of medical staff within a few days of each medical request or incident.

However, Plaintiff argues Defendant Rice did not permit him to go to the hospital for treatment after Pendleton re-broke his collarbone on February 5, 2015. ECF No. 59, p. 14. He argues she fabricated the report that there was no swelling. ECF No. 59, p. 38. He argues she was "trying to cover up" for Defendant Pendleton by minimizing the extent of his injuries. ECF No. 42, pp. 3-4. A review of the medical notes for February 7, 2014, indicate the nurse noted no bruising, discoloration, or swelling. It also indicates Plaintiff put in a sick call for a broken collarbone and pain from it, but complained of no pain at the time of the examination. No mention is made of bone alignment or appearance, simply that Plaintiff had good range of movement and could take off and put on his clothes without difficulty. ECF No. 32-4, pp. 29-30. In contrast, Dr. Hopkins saw Plaintiff and February 9. 2015, and recommended a shoulder brace to "keep shoulder in place." ECF No. 32-4, p. 31. Due to the disparity between the nurse notes on February 6, 2014, and the physician notes on February 9, 2014, a material question of fact exists as to whether Defendant Rice was deliberately indifferent to Plaintiff's serious medical needs after the incident with Pendleton. Further, the medical records make it clear that Dr. Hopkins repeatedly prescribed a shoulder brace/sling for Plaintiff's shoulder. Yet, Plaintiff alleges Rice took his shoulder brace or sling away when he was returned to the general population on December 30, 2016, despite the fact that his collarbone was visibly not healed. ECF No. 59, p. 16. This raises a question of material fact as to whether Defendant Rice was deliberately indifferent to Plaintiff's serious medical needs. Finally, Plaintiff alleges Defendant Rice denied him pain medication. The record is devoid of any facts as to whether Defendant Rice was involved in the decision to deny Plaintiff all pain

medication when he returned from the hospital on December 14, 2014.  This remains as a question of material fact as well.

Plaintiff alleges Defendant Pendleton re-broke his collarbone and then refused to take him for medical attention, telling him instead to file a kiosk request and walking away.  Defendants do not dispute this version of events.  Instead, they argue Defendant Pendleton is not a medical provider.  They further argue the medical records show Plaintiff was under the care of Rice and Hopkins during this time period.  Plaintiff alleges the collarbone was visibly broken.  ECF No. 59, p. 15.  Taking Plaintiff's allegations as true, Plaintiff has provided sufficient summary judgment evidence to show Pendleton was deliberately indifferent to Plaintiff's serious medical need because Plaintiff's need should have been obvious to a layperson.  A material question of fact therefore remains as to whether Defendant Pendleton denied or delayed medical care to Plaintiff after the alleged excessive force incident on February 5, 2015.

**D.  Retaliation - Defendant Myers**

Plaintiff alleges Defendant Myers denied him noon chow on March 5, 2015, in retaliation for filing a lawsuit.  Defendant argue Plaintiff's allegations about this incident are false.

"To prevail on a § 1983 claim for retaliation in violation of the First Amendment, [a Plaintiff] must demonstrate (1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity." *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013) (citing *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)).

In general, "[c]onduct that retaliates against the exercise of a constitutionally protected

right is actionable, even if the conduct would have been proper if motivated by a different reason." *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001) (citation omitted); *Madewell v. Roberts,* 909 F.2d 1203, 1206 (8th Cir. 1990) (same). "Indeed, the retaliatory conduct does not itself need to be a constitutional violation in order to be actionable." *Id. See also Dixon v. Brown,* 38 F.3d 379, 380 (8th Cir.1994)("[W]hen retaliatory conduct is involved, there is no independent injury requirement."). "Yet, there are some injuries so de minimis that they do not rise to the level of constitutional violation. 'It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise.'" *Evenstad v. Herberg*, 994 F. Supp. 2d 995, 1001 (D. Minn. 2014)(quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). "The ordinary-firmness test is . . .designed to weed out trivial matters from those deserving the time of the courts as real and substantial violations of the First Amendment." *Santiago*, 707 F.3d at 992 (8th Cir. 2013) (citing *Garcia v. City of Trenton,* 348 F.3d 726, 728 (8th Cir. 2003).

Because nearly every otherwise routine administrative decision may potentially be viewed as a retaliatory act, it has been recognized that "[r]etaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir. 1996). Further, the courts have recognized that prison officials must have broad administrative authority. *Graham,* 89 F.3d at 79. For this reason, it has been said that "courts must approach prisoner claims of retaliation with skepticism and particular care." *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir. 2001) (not every response to a prisoner's exercise of a constitutional right is actionable). *See also Turner v. Mull,* 784 F.3d 485 (8th Cir. 2015) *(*mere timing of events alone does not establish the requisite causal link*); Atkinson v. Bohn,* 91 F.3d 1127,

1129 (8th Cir. 1996) (per curiam)(speculative and conclusory allegations cannot support a retaliation claim).

Defendants argue Plaintiff tried to get a second tray for noon chow by first coming through the line with a towel on his head, and then removing the towel and coming through a second time. This is identified as a common ploy by inmates.  ECF No. 32-2.  The response to Plaintiff's grievance about this matter indicates there may have been some error that day, as Myers received further instruction about how to pass out trays, and Plaintiff was told there should no longer be a problem.  ECF No. 59, p. 53.  However, Plaintiff was unable to identify any statement by Myers which would indicate the denial of a food tray was in retaliation for this lawsuit or any other action by Plaintiff.  Instead, Plaintiff could only point to body language and mannerisms, and the fact that Myers ignored him.  This is not sufficient to show retaliation.  Further, even if true, the injury was *de minimis* and Plaintiff was not deterred from exercising his constitutional rights by this action, as he filed a grievance about the incident.  ECF No. 59, p. 53.

There are no disputed material facts concerning Plaintiff's retaliation claim against Defendant Myers, and Defendant Myers is entitled to judgment as a matter of law on this claim.

**E.  Failure to Protect – Temple**

Plaintiff alleges Defendant Temple ignored two requests for protection on December 13, 2014, resulting in his injury the next day.  Defendants argue this was surprise attack and there was further no lack of supervision in the pods.  ECF No. 32, pp. 9-10.

Prison officials have a duty, under the Eighth Amendment, to protect prisoners from violence at the hands of other prisoners.  *See Perkins v. Grimes,* 161 F.3d 1127, 1129 (8th Cir. 1998).  However, not "every injury suffered by one prisoner at the hands of another . . . translates

into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).

To prevail on his failure to protect claim, Plaintiff must satisfy a two prong test: (1) show he was "incarcerated under conditions posing a substantial risk of serious harm;" and (2) the prison officials were "deliberately indifferent [to his] health or safety." *See Holden v. Hirner,* 663 F.3d 336, 341 (8th Cir. 2011) (internal citations omitted). The first prong is an objective requirement to ensure the deprivation is a violation of a constitutional right. *Id.* The second, however, is subjective requiring Plaintiff show the official "both knew of and disregarded 'an excessive risk to inmate health or safety.'" *Id. (quoting Farmers,* 511 U.S. at 837). "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Young v. Selk,* 508 F.3d 868, 873 (8th Cir. 2007). Negligence alone is insufficient to meet the second prong, instead, the official must "recklessly disregard a known, excessive risk of serious harm to the inmate." *Davis v. Oregon County,* 607 F.3d 543, 549 (8th Cir. 2010) (internal quotation marks and citation omitted). Furthermore, "[c]laims under the Eighth Amendment require a compensable injury to be greater than *de minimis.*"*Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008).

There is no dispute that Plaintiff suffered an actual injury sufficient to support an Eighth Amendment claim. Defendant s argue Temple did not know of the risk to Plaintiff of assault by other inmates. Specifically, they argue Plaintiff did not allege there were any prior threats or altercations between himself and those inmates. They also argue the record does not indicate Plaintiff filed any grievances asking to be removed from the pod. ECF No. 32, p. 10. In his affidavit, Captain Mitcham indicated there are two ways for an inmate to communicate a concern

for his physical safety to jail staff.  They can use the grievance process or they can tell a detention officer personally.  In either case, the issue can be dealt with privately.  He stated the records for December 13, 2014, do not show that Plaintiff made any attempt to speak with jail staff or make jail staff aware that he was concerned for his physical safety.  He further stated the frequency of Plaintiff's grievances on other issues both prior to and after this incident evinced both his familiarity with the grievance process and his willingness to use it.  ECF No. 32-5, pp. 1-2.

Plaintiff alleges he informed Temple that he feared physical harm on December 13, 2014, by giving him two handwritten grievances which he passed through the bean hole.  ECF No. 59, p. 4.  He did not use the kiosk.

Plaintiff's allegations are contradicted by the record.  The documents submitted by both himself and Defendant show he was quite willing and capable of using the grievance process, and has continued to do so at the ADC.  Plaintiff does not make any allegations he was prevented from entering a grievance on the kiosk, making it unclear as to why he chose to rely on handwritten grievances pushed through the bean hole in this single instance.

There are no disputed material facts concerning Plaintiff's failure to protect claim against Defendant Temple, and Defendant Temple is entitled to judgment as a matter of law on this claim.

**4.**     **CONCLUSION**

For the reasons stated, I recommend that Defendants' Motion for Summary Judgment (ECF No. 31) be **GRANTED in part and DENIED in part**.  I recommend that Plaintiff's claims against Defendants McGough, Temple, and Myers be dismissed with prejudice.  I further recommend that Plaintiff's official capacity claims for denial of medical care against Union County, and his individual capacity claims for denial of medical care against Defendant Rice and Pendleton remain for further consideration.  I note the claim of excessive force against Defendant Pendleton also

20

remains for trial as Defendant's admit there are material issues of fact regarding that claim.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 6th day of 2017.**

/s/  Barry A. Bryant
_____
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE